RICHARD HAMLIN *v.* COMMISSIONER OF
CORRECTION
(AC 29455)

Flynn, C. J., and DiPentima and Arnold, Js.

Argued January 14—officially released April 7, 2009

*Jodi Zils Gagne*, special public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Kelly A. Masi*, assistant state's attorney, for the appellee (respondent).

DiPENTIMA, J. In an amended petition for a writ of habeas corpus filed November 20, 2006, the petitioner, Richard Hamlin, alleged that his attorneys at his criminal trial provided ineffective assistance of counsel when they failed to cross-examine adequately one of the state's witnesses and failed to present evidence of third party culpability.[1] Following a trial on the merits, the habeas court denied the petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) denied his motion for a continuance and (2) determined that he had failed to prove that he had received ineffective assistance of counsel. We affirm the judgment of the habeas court.

"On June 24, 2001, the [petitioner] and [Omar] Vaughn were involved in a fight on the sidewalk of 179 Mather Street in Hartford. The following day, Vaughn returned to 179 Mather Street on his bicycle, hoping to 'peace up the situation' with the [petitioner]. As Vaughn approached that location, the [petitioner] emerged from a crowd, gun in hand. Vaughn immediately discarded his bicycle and ran. While running, Vaughn was shot in the back of his lower left thigh and knee. The [petitioner] fled with [William] Moore in a gold Oldsmobile Alero." *State* v. *Hamlin*, 90 Conn. App. 445, 448, 878 A.2d 374, cert. denied, 276 Conn. 914, 888 A.2d 86 (2005).

"On the day of the shooting, Moore voluntarily entered the Hartford police station and gave a statement. In that statement, he indicated that, from his car, he had witnessed the events that unfolded in front of 179 Mather Street. Moore stated that after the assailant

---

[1] The petitioner also argued that he suffered ineffective assistance of counsel on the basis of his trial attorneys' failure to cross-examine two witnesses adequately, failure to call the petitioner's investigator as a witness and improper objection to the state's attempt to explore the petitioner's placement in a holding cell with a witness. These allegations are not at issue on appeal.

shot Vaughn, the assailant entered Moore's vehicle and told Moore to drive. Because the assailant was armed, Moore 'did what he said and dropped him off on the next corner.' Moore did not identify the assailant in his June 25, 2001 statement to the police. . . . On December 17, 2002, Moore, who was being held in lieu of bond on various charges regarding an unrelated domestic incident, was brought to court pursuant to a writ of habeas corpus ad testificandum. On that day, the [petitioner] and Moore were placed in the same holding cell at the Hartford Superior Court. While in the cell, the [petitioner] stated to Moore, 'You know, if they put you on the stand, just say you wasn't with me.' That same day, Moore made his first identification of the [petitioner] as the assailant in this case. Moore testified at both the December 18, 2002 suppression hearing and at trial as to the [petitioner's] statement in the holding cell, which the prosecution used as evidence of the [petitioner's] consciousness of guilt." Id., 449–50.

On January 14, 2003, the jury found the petitioner guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). *State* v. *Hamlin*, supra, 90 Conn. App. 447. The court sentenced the petitioner to thirteen years incarceration, five years mandatory minimum, with ten years of special parole. Id., 448. The petitioner appealed to this court, and this court affirmed the judgment of conviction. Id.

In his amended petition for a writ of habeas corpus, the petitioner claimed that his trial attorneys, Lisa Sosa and Sara Bernstein, provided ineffective assistance when, inter alia, they failed (1) to cross-examine Moore regarding the conversation he had with the petitioner when they were in a holding cell together prior to the petitioner's trial and (2) to present evidence of third party culpability.

At the habeas trial, Bernstein testified regarding her representation of the petitioner. She stated that another attorney, Sosa, was assigned to the petitioner's case and that she, Bernstein, had been assigned to assist Sosa.[2] She testified that she and Sosa met with the petitioner, discussed the benefits of and drawbacks to potential trial strategies and filed the proper pretrial motions in the case. She stated that Sosa was very thorough in her representation of the petitioner, committing time in the evenings and on the weekends to trial preparation and exploring every avenue of defense. Bernstein testified that she and Sosa originally planned on presenting an alibi theory of defense but that the witness provided by the petitioner gave conflicting versions of her story, eventually placing the petitioner at the scene of the crime and informing them that she was leaving the state. Bernstein explained that there were additional credibility concerns about the witness due to a prior conviction for giving a false statement to the police to exculpate another individual.

Bernstein further testified that she and Sosa made a tactical decision not to cross-examine Moore regarding the petitioner's alleged statement in the holding cell because it would open the door to other testimony that would be detrimental to the petitioner's case and cause Moore to repeat a potentially negative statement by the petitioner. Bernstein explained that instead, the strategy was to raise doubts as to Moore's credibility by focusing on his prior inconsistent statements and felony convictions. She testified that Sosa cross-examined Moore repeatedly regarding whether he had received any consideration from the prosecution for his testimony. With regard to evidence of third party culpability, Bernstein testified that the petitioner provided the names of two individuals who could have been the shooter but that, upon investigation, neither yielded

---

[2] Sosa did not testify at the habeas trial.

information sufficient to present a third party culpability claim. She stated that the petitioner provided her and Sosa with conflicting information, none of which proved helpful to his defense.

The petitioner testified that prior to trial he was placed in a cell with his friend, Moore. He stated that Moore left the cell with a state's inspector and the detective who had been assigned to the petitioner's case. He further testified that when Moore came back to the cell fifteen minutes later, Moore asked the petitioner numerous questions regarding his case.

In its memorandum of decision, the court stated: "The court is satisfied that attorneys Sosa and Bernstein represented the petitioner competently. Although Sosa failed to examine Moore regarding the placement of Moore with the petitioner in the same cell, the petitioner has failed to demonstrate, but for that failure, a reasonable probability that the outcome of the trial would have been different. This court is simply not convinced that had [the petitioner's] counsel cross-examined Moore about the incident in the cell, it would have changed the outcome of the trial." The court also stated that the petitioner had presented no evidence that, had it been pursued, the defense of third party culpability would have likely been successful. The court concluded that the petitioner had failed to demonstrate, under the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that he was prejudiced by his counsel's alleged ineffective assistance and denied the petition for a writ of habeas corpus. On November 27, 2007, the court granted certification to appeal. This appeal followed.

I

The petitioner first claims that the habeas court improperly denied his motion for a continuance. We do not agree.

On July 25, 2007, the day of trial, counsel for the petitioner informed the court that he had been unable to locate Moore. Counsel asked if he could proceed with the witnesses who were present and then have a continuance so that he could locate Moore "perhaps in another month or so . . . ." The court instructed the petitioner to move forward with his available witnesses and then to provide the court with information regarding why he was unable to locate Moore and what relevant testimony Moore would provide.

Following the testimony of Bernstein and the petitioner, the court inquired of counsel for the petitioner as to his missing witness. In response, counsel stated that his investigator had been in touch with Moore's parole officer but had been unable to serve Moore with a subpoena. He stated: "My investigator has not spoken with him, but I have information from speaking with my client regarding what Mr. Moore would testify to." Specifically, he stated that he anticipated Moore would testify regarding his cooperation with the state and his conversation with the petitioner in the holding cell. The respondent, the commissioner of correction, objected to the motion. Thereafter, the court denied the petitioner's motion for a continuance.

"It is well settled that [t]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . . Therefore, on appeal, we . . . must determine whether the trial court's decision denying the request for a continuance was arbitrary or unreasonabl[e]." (Internal quotation marks omitted.) *State* v.

*Lopez*, 280 Conn. 779, 786–87, 911 A.2d 1099 (2007); *Mitchell* v. *Commissioner of Correction*, 93 Conn. App. 719, 724, 891 A.2d 25, cert. denied, 278 Conn. 902, 896 A.2d 104 (2006). "[T]he right of a [petitioner] to a continuance is not absolute and the propriety of a denial of one is to be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 814, 817, 817 A.2d 1274, cert. denied, 263 Conn. 926, 823 A.2d 1217 (2003); see *State* v. *Hamilton*, 228 Conn. 234, 240, 636 A.2d 760 (1994).

Our review of the record reveals that the court did not abuse its discretion when it denied the petitioner's motion for a continuance. The trial date had been set three times. The third and final time was at the petitioner's request, by motion dated April 9, 2007, citing the unavailability of counsel. The petitioner first sought time to locate Moore on the day of trial. "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) *State* v. *Calderon*, 82 Conn. App. 315, 320, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004). Moreover, counsel had not, since the filing of the amended habeas petition some eight months prior to trial, successfully located Moore or spoken to him regarding his testimony. The only information counsel provided to the court as to the substance of Moore's anticipated testimony came from the petitioner himself. See *State* v. *Brunetti*, 279 Conn. 39, 80–82, 901 A.2d 1 (2006) (denial of motion for continuance to find witness not abuse of discretion when motion made during trial and counsel had ample time to locate witness), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

We therefore conclude that the court did not abuse its discretion in denying the petitioner's motion for a continuance.

## II

The petitioner next claims that the court improperly determined that he was not denied the effective assistance of counsel. Specifically, he claims that his attorneys were "severely deficient" because they failed to cross-examine Moore regarding his conversation with the petitioner in the holding cell and to present evidence of third party culpability. We disagree.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *McClean* v. *Commissioner of Correction*, 103 Conn. App. 254, 262, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008).

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Andrades* v. *Commissioner of Correction*, 108 Conn. App. 509, 511–12, 948 A.2d 365, cert. denied, 289 Conn.

906, 957 A.2d 868 (2008); see *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 62–63, 951 A.2d 520 (2008).

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . . Turning to the prejudice component of the *Strickland* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Andrades* v. *Commissioner of Correction*, supra, 108 Conn. App. 512.

Because a petitioner must establish both prongs to prevail, a habeas court may dismiss the petitioner's claim if he fails to satisfy either prong. *Griffin* v. *Commissioner of Correction*, 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006). "Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." Id., 366; see *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988).

On the basis of our review of the evidence presented at the habeas trial, specifically Bernstein's testimony, we agree with the court that the petitioner failed to establish a reasonable probability that had trial counsel cross-examined Moore with regard to the petitioner's

alleged statement in the holding cell, the outcome of the trial would have been different. Bernstein testified that Sosa subjected Moore to extensive cross-examination regarding his prior inconsistent statements and felony convictions to challenge his credibility. She further testified that she and Sosa decided that cross-examining Moore regarding his conversation with the petitioner in the holding cell would have been detrimental to the petitioner's case but that Sosa did question Moore as to whether he was receiving consideration from the prosecution for his testimony, to which he responded in the negative. The trial transcript supports this testimony. Thus, the petitioner failed to present evidence that had counsel cross-examined Moore further, there is a reasonable probability that the outcome of the trial would have been different.

Similarly, we agree that the petitioner did not meet his burden of establishing a reasonable probability that the outcome of the trial would have been different had trial counsel presented evidence of third party culpability. Our review of the record supports the court's conclusion that "[t]he petitioner has presented absolutely no evidence that had the third party culpability defense been pursued, it would have likely been successful." The petitioner bears the burden of establishing prejudice in his claim of ineffective assistance of counsel. See *Burke* v. *Commissioner of Correction*, 90 Conn. App. 370, 374–75, 877 A.2d 885, cert. denied, 275 Conn. 926, 883 A.2d 1241 (2005). "Mere conjecture and speculation are not enough to support a showing of prejudice." Id., 378. Here, the court had evidence, particularly Bernstein's testimony, that the state's case against the petitioner was strong and that there was insufficient evidence to present a third party culpability claim. Such evidence is insufficient to meet the petitioner's burden under the *Strickland* test. See *Andrades* v. *Commissioner of Correction*, supra, 108 Conn. App. 512.

Accordingly, the court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.