THE WEST HAVEN LUMBER COMPANY *v.* SENTRY CONSTRUCTION CORPORATION
(AC 29609)

Flynn, C. J., and Lavine and Hennessy, Js.

Argued April 13—officially released October 6, 2009

*Lawrence G. Rosenthal,* for the appellant (defendant).

*Genevieve P. Salvatore,* for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Sentry Construction Corporation, appeals from the judgment of the trial court awarding the plaintiff, The West Haven Lumber Company, $16,731.37 plus taxable costs. On appeal, the defendant claims that the court abused its discretion in denying both the defendant's motion for a continuance and motion for a nonsuit. Additionally, the defendant claims that the court was incorrect in failing to apply credits to the defendant's account, which would have reduced the amount of debt owed to the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history inform our disposition of the defendant's appeal. Beginning in 2005, the plaintiff, a dealer in building supplies, sold construction materials to the defendant, a general contractor, pursuant to a credit agreement between the parties. Because of alleged failed payments on this open account, the plaintiff filed a complaint against the defendant instituting this collection action on October 2, 2006. Following a default judgment in January, 2007, the court granted the defendant's motion to open the judgment. The pleadings closed in March, 2007.

Following informal discovery and unsuccessful negotiations through September, 2007, the parties were notified in October that the court had set a trial date for December 12, 2007. For the first time since the action began in October, 2006, the defendant engaged in formal

discovery by sending a notice of deposition to the plaintiff on November 9, 2007. The defendant requested to depose the plaintiff's corporate representative on November 28, 2007. In response to this deposition notice, the plaintiff filed a motion for a protective order stating that its counsel's busy hearing schedule made counsel unavailable for a deposition on the day the defendant requested.[1] Because the parties could not agree on an alternative deposition date, the defendant filed a motion for a continuance.[2] Before the court rendered a decision on the continuance request, the court granted the plaintiff's motion for a protective order, while also ordering that a "[d]eposition . . . be scheduled at a mutually convenient time prior to December 12, 2007." Because the plaintiff's counsel could not find a "mutually convenient time" to hold a deposition, the defendant, in turn, filed a motion for a nonsuit.

When the trial date arrived, the plaintiff's corporate representative had not been deposed. Consequently, the defendant's counsel renewed his motion for a continuance and requested that the court rule on the earlier motion for a nonsuit. After the court denied both of these motions, thereby allowing the case to move forward, the court considered evidence regarding the appropriate amount of debt owed to the plaintiff. Because the court found the "plaintiff's evidence and explanations the more credible [as compared to the defendant's]," the court determined that the defendant was indebted to the plaintiff in the amount of $13,385.11.[3] Additional facts will be provided as necessary.

---

[1] Not only did the plaintiff's counsel state that she had a hearing on November 28, 2007, but she also stated that she was traveling to Georgia for a hearing at the end of November and had previously scheduled hearings on November 19, 29 and 30, and December 3, 4 and 12.

[2] Although no written notice was provided, the parties were notified by the clerk of the court that the defendant's motion for a continuance was denied.

[3] Because the defendant agreed in the credit application to pay collection costs, including attorney's fees, to the plaintiff, the court determined the plaintiff's total award to be $16,731.37.

I

On appeal, the defendant first claims that the court acted arbitrarily in denying its request for a continuance.[4] In support of this claim, the defendant states that the inability to depose the plaintiff's corporate representative proved prejudicial at trial. Specifically, the defendant argues that the lack of a pretrial deposition left it unprepared to confront: duplicate copies of invoices, instead of originals; a revised reconciliation sheet, instead of the original reconciliation sheet that accompanied the complaint; and the plaintiff's new accounting of the defendant's balance prepared for trial, allegedly an amount arrived at through information the deposition would have revealed.[5] We are not persuaded by these arguments.

We first set forth the applicable standards governing our resolution of the defendant's appeal. "The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . In addition, matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court. . . . Accordingly, a trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed

---

[1] The defendant acknowledged at oral argument before this court that the original motion for a continuance was denied properly. The court's denial of the second motion for a continuance raised at trial is the claim on appeal.

[5] The defendant states that the ultimate prejudice against it was the inability to ascertain the information in exhibit five before trial. Exhibit five contains a summary of the outstanding invoices, which the plaintiff argues reflect the balance owed by the defendant. Because the court relied on exhibit five in determining the plaintiff's award, the defendant argues that a deposition would have allowed access to this information in advance of trial, thereby decreasing the alleged prejudice the defendant experienced when it saw the exhibit for the first time at trial.

by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances . . . .

"A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant [bears the burden of] show[ing] that the trial court's denial of a request for a continuance was [unreasonable or] arbitrary . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citations omitted; internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 12, 961 A.2d 1016 (2009). It is important to note that "[w]e are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) *Hamlin* v. *Commissioner of Correction*, 113 Conn. App. 586, 593, 967 A.2d 525, cert. denied, 291 Conn. 917, 970 A.2d 728 (2009).

Although no single continuance test exists, "[o]ur Supreme Court has catalogued a nonexhaustive list of relevant factors that courts frequently consider when determining whether to grant a motion for a continuance. Courts have considered matters such as: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Internal quotation marks omitted.) *Mazurek* v. *East Haven*, 99 Conn. App. 795, 807, 916

A.2d 90, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007). "Although the court need not consider all of these factors in every case, and may consider factors not previously enumerated, the [previously mentioned list of factors] provides a useful framework in which to consider the court's exercise of its discretion." Id.

On the basis of the foregoing standard, we conclude that it was not an abuse of the court's discretion to deny the defendant's motion for a continuance. The court reasoned that the collection of an open account is a simple matter, not a complex undertaking. Accordingly, the court did not think it was necessary for the case to consume any more time than it already had to arrive at a disposition. In denying the renewed motion for a continuance, however, the court added the caveat that it would entertain a future continuance request by the defendant if it believed that it could not proceed at trial without having previously deposed the plaintiff's witnesses.

In response to the court's leaving the continuance door potentially open, the defendant raised the issue that prejudice concerns may arise further along in the proceeding, citing again the inability to depose the plaintiff's corporate representative in advance of trial as the justification. With each prejudice argument raised, however, the court determined, on the basis of the evidence presented, that the defendant was not disadvantaged or taken advantage of in light of the lack of formal discovery. In response to the defendant's specific argument focusing on the prejudice associated with not having viewed the plaintiff's exhibit five before trial, the court, yet again, rejected the continuance request because the plaintiff bore the burden of proving the amount of debt owed, not the defendant. Thus, the court clearly weighed the continuance argument raised by the defendant before denying the request and allowing the case to proceed.

Even though the previously mentioned circumstances standing alone adequately support the court's denial of the motion for a continuance, additional findings by the court strengthen our determination that the court's decision was reasonable. For example, the court stated in its response to the defendant's motion for articulation that counsel from both sides contributed to the deposition's delay. Neither party in fact moved to depose the other for more than one year after the complaint was filed. Additionally, the court found, in its memorandum of decision on the defendant's motion for a new trial, that the defendant's counsel had failed to perform his trial preparation in a timely fashion. Last, because the defendant claims on appeal particular prejudice from an exhibit introduced at trial that did not exist at the proposed deposition date, a presumption exists, especially given the previously mentioned findings of delay by the court, that the defendant's motion for a continuance lacks legitimacy.[6] As a result, the defendant did not meet its burden of proof in showing that the court's denial of its motion for a continuance was an unreasonable or arbitrary decision.[7]

We conclude that the court adequately considered the defendant's motion for a continuance and that the denial of the motion was not an abuse of discretion.

## II

The defendant next clams that the court improperly denied its motion for a nonsuit. The defendant states

---

[6] The plaintiff's exhibit five, which the defendant argues most severely prejudiced it, was created the day before trial. Thus, it would not have been discussed at a deposition before trial.

[7] The defendant relies on *Ramos* v. *Ramos*, 80 Conn. App. 276, 835 A.2d 62 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004), in arguing that the failure of a party to have the opportunity to refute an important and untimely piece of evidence constitutes prejudice. Not only did *Ramos* involve an arguably more complex damages action than the current collection action before this court, but the defendant here has not adequately shown that deposing the plaintiff's corporate representative would have impacted the outcome of the case.

that it not only properly gave notice of the deposition of the plaintiff's corporate representative, but that the court, in ruling on the plaintiff's motion for a protective order, ordered the deposition to be taken prior to trial. Because the defendant was denied that discovery, it argues that the court abused its discretion in refusing to grant the motion for a nonsuit. We disagree.

Because the procedural history was recited previously in detail, we only briefly highlight the court's deposition order that gave rise to the motion for a nonsuit. On November 27, 2007, the court granted the plaintiff's motion for a protective order. Although the court granted this motion, the court also ordered that a "[d]eposition . . . be scheduled at a mutually convenient time prior to December 12, 2007," the date set for trial. Because the plaintiff's counsel could not find a convenient time to schedule the deposition prior to trial, the defendant filed a motion for a nonsuit on December 3, 2007. At trial, the court denied the defendant's nonsuit request, determining that it was not worth penalizing anyone for the failure to hold a deposition.

"Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding upon his inability to maintain his cause in court, or when he is in default in prosecuting his suit or in complying with orders of the court. . . . The nonsuit forecloses the plaintiff from further prosecution of the action . . . ." (Citation omitted; internal quotation marks omitted.) *Trumbull* v. *Palmer*, 104 Conn. App. 498, 512, 934 A.2d 323 (2007), cert. denied, 286 Conn. 905, 944 A.2d 981 (2008).

Practice Book § 13-14 provides sanctions for failure of a party to appear and to testify at a deposition duly noticed, which the court may order upon motion as the "ends of justice require." Practice Book § 13-14 (a).

"These orders may vary in severity from entry of a nonsuit or default or judgment of dismissal to an award of costs of the motion, including a reasonable attorney's fee. Decisions on the entry of such sanctions rest within the sound discretion of the trial court. . . . On viewing a claim that this discretion has been abused, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did. . . .

"The factors to be considered by the court include: (1) whether the noncompliance was caused by inability, rather than wilfulness, bad faith or other fault; (2) whether and to what extent noncompliance caused prejudice to the other party, including the importance of the information sought to the party's case; and (3) which sanction would, under the circumstances of the case, be an appropriate judicial response to the noncomplying party's conduct." (Citations omitted; internal quotation marks omitted.) *Tuccio* v. *Garamella*, 114 Conn. App. 205, 208, 969 A.2d 190 (2009).

In addressing the noncompliance factor, we conclude that the record supports that the court reasonably could have concluded that the plaintiff's counsel was unable to attend a deposition before trial.[8] At trial, the plaintiff's counsel laid out her schedule, in detail, in support of her argument that a mutually convenient time to schedule a deposition was simply not possible.[9] No evidence exists

---

[8] Because the plaintiff's counsel claimed that a mutually convenient time prior to December 12, 2007, did not exist in light of her schedule, counsel argued that she was not disregarding the court's order. Because we affirm on other grounds, given the particular time constraints existing in this case, in light of the full record, we need not address this argument.

[9] In support of her inability to reschedule a deposition before trial, the plaintiff's counsel stated to the court, "If I could have found a day, Your Honor, that would not have prejudiced my other clients, I certainly would have done so. However, given the—the time of the year, given the—the short timing with which [the defendant's counsel] decided to notice his deposition it simply wasn't possible."

that the plaintiff wilfully disregarded the order when it was in fact possible to comply with it or that the plaintiff avoided the deposition out of bad faith.[10]

Because we addressed the prejudice factor in the context of the defendant's motion for a continuance claim, we only briefly discuss it here. The court appropriately found that the extent of the prejudice experienced by the defendant did not support the granting of a nonsuit. This is true given the court's finding that counsel for both parties contributed to the deposition's delay; it also is true because exhibit five, the exhibit allegedly causing the most prejudice to the defendant, did not exist until the day before trial and, thus, would not have been discussed at a pretrial deposition.

The final nonsuit factor is whether the court abused its discretion in determining that, under the circumstances of the case, no sanction was the appropriate judicial response to the noncomplying party's conduct. "[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort. . . . [T]he sanction of dismissal

---

[10] Although arguably "other fault" exists under this first nonsuit factor because the plaintiff did not request that the court clarify the intention of its order, even if such a clarification mandated a pretrial deposition, nothing in the record supports that the plaintiff's counsel could then have reshuffled her hearing schedule to comply with that unequivocal directive.

should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court." (Internal quotation marks omitted.) Id., 209.[11]

Under the circumstances of this case, we conclude that the court appropriately denied sanctions against the plaintiff. Provided the time constraints between the originally scheduled deposition and the start of trial, the plaintiff's counsel explained that she was unable to schedule a deposition. Furthermore, the defendant did not persuade the court that it suffered prejudice due to the lack of the deposition. Thus, granting the defendant's nonsuit request would have been disproportionate to the violation of the discovery order. See id., 210.

Accordingly, we conclude that the court adequately considered the defendant's motion for a nonsuit and that the denial of the motion was not an abuse of discretion.

### III

The defendant last claims that the court was incorrect in failing to apply credits to its account. Specifically, the defendant argues that a number of credits for materials charged and later returned to the plaintiff were not accounted for in the plaintiff's ultimate balance determination in exhibit five. We are not persuaded.

Because the determination of whether the plaintiff appropriately applied credits due on the defendant's account is a question of fact, the trial court's credit findings are binding on this court unless such findings are clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to

---

[11] The court determined that the standard for sanctions in *Tuccio*, as adopted from *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 16–17, 776 A.2d 1115 (2001), applies equally to nonsuits and dismissals.

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 487, 970 A.2d 592 (2009).

Our review of the record reveals that the court did not incorrectly refuse to apply the defendant's alleged credits on the account. From the transcript, as well as the court's memorandum of decision, it is clear that the court weighed conflicting evidence and testimony regarding the numerous credits involved. After evaluating the credit arguments, the court specifically found that the plaintiff's explanations and evidence as to the amount owed were much more credible than the defendant's.

Although it is true that the defendant's cross-examination of the plaintiff's credit manager called into question whether some credits were appropriately applied to the plaintiff's exhibit five, we are not left with the definite and firm conviction that a mistake has been committed. Conversely, the entirety of the evidence strongly supports the court's determination that the plaintiff's balance was accurate. For example, the court indicated in its articulation of its decision that the testimony of the defendant's president regarding credits was not credible; in fact, the document admitted in support of the president's credit arguments was found by the court to be "self-serving" and "untrustworthy,

in fact, contrived . . . ." Because we give great deference to the court's weighing of evidence and credibility determinations, and make all reasonable presumptions in favor of its ruling, we conclude that it was not clearly erroneous for the court to reject the defendant's credit arguments.

The judgment is affirmed.

In this opinion FLYNN, C. J., concurred.

LAVINE, J., concurring. In the usual circumstance, counsel's failure to find the time—even in the midst of a busy schedule—to attend a court-ordered deposition prior to trial would create significant concerns about the fairness of the proceedings. The order requiring that a deposition be scheduled at "a mutually convenient time" cannot plausibly be read as a request of counsel to schedule a deposition only if a convenient time could be found. The only reasonable reading was to *require* counsel to make herself available for a deposition. Nonetheless, I agree that the court's denial of the motions filed by the defendant, Sentry Construction Corporation, for a continuance and a nonsuit was not an abuse of discretion, given the particular facts of this case. This decision should not, however, be read to countenance self-serving interpretations of court orders.

For the foregoing reasons, I respectfully concur in the majority opinion.